1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3
     OTR TRANSPORTATION, INC., an      )   No. 21 C 3415
4    Illinois corporation,             )
                                       )
5                Plaintiff,            )
                                       )
6          vs.                         )   Chicago, Illinois
                                       )
7    DATA INTERFUSE, LLC, a Virginia   )
     limited liability company, and    )
8    JOHN LOVEGROVE, an individual,    )
                                       )   November 5, 2021
9                Defendants.           )   10:31 a.m.

10                 TRANSCRIPT OF PROCEEDINGS
11    BEFORE THE HON. JEFFREY T. GILBERT, MAGISTRATE JUDGE

12   APPEARANCES:

13   For the Plaintiff:    MR. THOMAS P. YARDLEY, JR.
                           Robbins, Salomon & Patt, Ltd.,
14                         180 North Clark Street, Suite 3300,
                           Chicago, Illinois  60601
15

16   For the Defendants:  MR. PAUL H. TZUR
                          Blank Rome LLP,
17                        444 West Lake Street, Suite 1650,
                          Chicago, Illinois  60606
18
                          MR. S. GREGORY HERMAN
19                        Blank Rome LLP,
                          1825 Eye Street, NW,
20                        Washington, DC  20006

21

22

23                 PATRICK J. MULLEN
                Official Court Reporter
24            United States District Court
          219 South Dearborn Street, Room 1412
25             Chicago, Illinois  60604
                   (312) 435-5565

1    (Telephonic proceedings on the record.)

2         THE CLERK:  21 Civil 3415, OTR Transportation,

3    Incorporated, versus Data Interfuse, LLC, et al.

4         THE COURT:  Okay.  Good morning.

5         As you can tell, we're giddy in the courtroom here

6    because it's a Friday and it's been one tough week, so happy

7    Friday to you.  We're doing this by telephone, but we also are

8    on the record here.  So please state your names for the record,

9    and then try and remember before you speak to just say your

10   name again, even just your last name, so that the court

11   reporter knows who's speaking if you ever have a transcript

12   prepared.

13        For plaintiffs -- plaintiff?

14    (Brief pause.)

15        THE COURT:  This would be the time to state your name

16   for the record if you're actually on.

17    (Brief pause.)

18        THE COURT:  Well, I thought you said everybody was

19   here.

20        THE CLERK:  I thought we had Mr. Yardley here.

21        THE COURT:  Do we have defendants here?

22        MR. YARDLEY:  Thomas Yardley on behalf of OTR, Your

23   Honor.

24        THE COURT:  Okay.  Good.

25        MR. TZUR:  And good morning, Your Honor.

1    MR. HERMAN:  Good morning.

2    MR. TZUR:  Paul Tzur and Greg Herman on behalf of the

3 defendants.

4    THE COURT:  Okay.  I know you've suggested a briefing

5 schedule on the motion that was filed to compel, but I have

6 some questions just to kind of get my land legs here so bear

7 with me.  Were the 26(a)(1) disclosures made and documents

8 produced with those disclosures as per my prior order?

9 Plaintiff first and --

10    MR. YARDLEY:  My understanding --

11    THE COURT:  Plaintiff first and then defendant.

12    MR. YARDLEY:  Tom Yardley, Your Honor, on behalf of

13 plaintiff.  Yes, we made a disclosure.

14    THE COURT:  Defendants?

15    MR. HERMAN:  Yes, Your Honor, we served disclosures,

16 but no documents were produced.

17    THE COURT:  Did you identify documents by category as

18 the rule requires, or did you just skirt that?

19    MR. HERMAN:  We identified documents by category or by

20 more specific information.

21    THE COURT:  Okay.  Then, plaintiff, did you do

22 likewise, or which did you do?

23    MR. YARDLEY:  That's my understanding, Your Honor.

24    THE COURT:  Okay.  Is there a plan to produce the

25 26(a)(1) documents?

1          MR. YARDLEY:  I think we produced the documents we had

2    identified, it's my understanding, Your Honor.

3          THE COURT:  That's the plaintiff?

4          MR. YARDLEY:  And it's --

5          THE COURT:  That's the plaintiff speaking, right?

6          MR. YARDLEY:  Yeah.

7          THE COURT:  I interrupted you.  Did you have more to

8    say other than you produced documents?

9          MR. YARDLEY:  That's my understanding, Your Honor.

10         THE COURT:  Defense, are you planning on producing

11   26(a)(1) documents, or are you waiting for discovery?

12         MR. HERMAN:  We were waiting for discovery requests,

13   Your Honor, and also --

14         THE COURT:  Let me interrupt you.  Let me interrupt

15   you.  I'm going to interrupt you.  Please, it shouldn't be that

16   hard.  Write on whatever pad of paper you have in front of you

17   or electronically "name."  Okay?  So before you speak, I have

18   got three men on the phone.  I can't see anybody.  The only

19   person whose voice I might recognize is Mr. Tzur because of

20   when he was here as a U.S. Attorney.  So would you just do me a

21   favor and state your name before you speak?  It makes

22   everything easier, you know.  If you get a transcript prepared,

23   you don't get "unknown" then.  So try and do this.  This is not

24   hard.  Go ahead.

25         MR. HERMAN:  My apologies, Your Honor.  This is Greg

1  Herman for defendants.  There was no document production from
2  OTR at any point in this case.

3          THE COURT:  Pardon?  Say that again.  There was no
4  document production from OTR, and did you say at any point in
5  this case?

6          MR. HERMAN:  Correct.  There has been no document
7  production from OTR at any point.

8          THE COURT:  Okay.  So do you want to revise what you
9  said, plaintiff's counsel, Mr. Yardley?

10          MR. YARDLEY:  I said it was -- this is Yardley
11  speaking.  It was my understanding that any document that we
12  referred to was produced.  It's possible that there were no
13  documents we produced.  The issue that we're going to be ready
14  to get to is there's a report that we don't believe is required
15  to be produced, and that is what the defendants are seeking as
16  part of their motion.

17          THE COURT:  Right, I understand that.  That's kind of
18  why I was asking this question.  I read your complaint, and you
19  seem in some ways -- I mean, I'm not deciding the question now,
20  but you certainly referenced it.  If it's the same report, you
21  referenced hiring a forensic expert.  I think you referenced
22  receiving information from them, and 26(a)(1) requires you to
23  produce documents that you may use to support your claims or
24  defenses.  If your claims or defenses -- well, if your claims
25  in your case are based on the report, I was kind of -- this was

1  my little way of asking did you produce it.  Did you produce

2  the report as part of your 26(a)(1) disclosures and, if not,

3  why not?  Maybe you're going to tell me you're not going to

4  rely on the report, but you kind of relied on it in the

5  complaint, unless these are two separate things.

6      MR. YARDLEY:  Well, our internal information

7  technology people identified what they understood to be an

8  improper, unauthorized access.  They then retained -- or

9  OTR retained the defendant to -- or its own independent expert

10  to verify that.  But they didn't -- they knew or at least they

11  believed and they explained to us that there was unauthorized

12  access and that they went to shut down the unauthorized access

13  and their system shut down.  So that was done by our internal

14  people.  So we identified the problem, attempted to correct it,

15  and the system went down.  That's my understanding.

16      When the system goes down, we need to get it back up

17  and figure out what happened and whether there was any improper

18  access.  So it was our internal people that identified the

19  problem and attempted to shut the back doors, for lack of a

20  better term, and that's what appeared to trigger the system

21  going down.  At least that's what the internal IT people at OTR

22  said.

23      So we have those people who identified a problem, and

24  then there was a second problem in that the system went down.

25  Then they had to hire someone to investigate what happened and

1 help them get it back up.

2 THE COURT: Okay. Move to strike.

3 MR. YARDLEY: And then --

4 THE COURT: Oh, you want to finish? Go ahead. Very

5 short, though.

6 MR. YARDLEY: And we haven't decided whether we are

7 using that expert or a different expert to document the fact

8 that there was unauthorized access, which is what the statute

9 relates to.

10 THE COURT: Okay. I move to strike as pretty much

11 non-responsive, but I do understand what you just told me. I

12 have what I think is an easy question, yes or no.

13 Unfortunately we're on the phone, so I try not to interrupt

14 people. If we were in the courtroom, you would have seen that

15 what you were saying was not getting to where I wanted to go.

16 So this, I think, is yes or no. Did you identify in your

17 26(a)(1) disclosures the tech forensic expert who is referenced

18 in paragraph 56 of your complaint which reads, quote --

19 MR. YARDLEY: No, we did not. Tom Yardley speaking.

20 No, we did not.

21 THE COURT: Okay. So your complaint says:

22 "OTR then hired a tech forensic expert to investigate

23 the cause of the problem that shut down OTR's software

24 program."

25 The next paragraph says:

1    "The forensic expert discovered that the unauthorized

2  John Lovegrove Gmail account was on OTR's database sometime

3  before September 30 and was" --

4       You know, they told you what was happening with this

5  account.

6       Then in paragraph 6 you said:

7       "OTR's expert concluded that between September 30th

8  and January 2nd, there were 160 instances whereby" -- blah,

9  blah, blah -- "the J. Lovegrove Data Interfuse account."

10       Even though you've alleged this in the complaint, you

11  didn't identify the expert who you're quoting there, and you're

12  not sure whether or not you're going to use him to support your

13  claims even though your claims seem to rely in part on what the

14  expert said.  If your people are going to testify about that,

15  then they might have a hearsay objection.  I don't know.

16       But I guess that's a long question.  I'm really sorry.

17  I'm going to modify that question with this.  Despite those

18  allegations in the complaint, you didn't identify that tech

19  forensic expert as a 26(a)(1) witness and you didn't produce

20  any report or reports he or she gave you, correct?

21       MR. YARDLEY:  That's correct.  We didn't do so, Your

22  Honor, because it's our understanding that we would have to

23  produce experts that we're going to rely on at trial and we

24  don't know if we're going to rely on that expert or a different

25  expert.

1    THE COURT:  That's a different issue, right?  Your

2  26(a)(2)(b) expert or (a)(2)(c) expert, those are people you're

3  going to call at trial.  This is maybe fact discovery as

4  opposed to expert discovery, so your position -- and I think it

5  was discussed in the defendants' motion -- is you don't have to

6  identify this particular person who's identified in the

7  complaint or produce his report unless and until you determine

8  that that's a trial expert, and you haven't made that

9  determination yet so they don't get it, right?

10    MR. YARDLEY:  That's our position, Your Honor.

11    THE COURT:  I'm just looking at something.  Hold on

12  for one second.

13    (Brief pause.)

14    THE COURT:  Okay.  I understand that.

15    A couple other questions before we move on.  The

16  Virginia case that's referenced in your status report, I want

17  to know a little bit.  I want to know what the status of the

18  Virginia case is in this respect.  Is discovery proceeding in

19  that case?

20    MR. YARDLEY:  No, it is not.

21    THE COURT:  Why not?

22    Tell me who's speaking.  That's got to be Yardley,

23  right?

24    MR. YARDLEY:  This is Tom Yardley, and it's not, Your

25  Honor.

1      THE COURT: Okay. Why not? Has it been stayed?

2      MR. YARDLEY: That is the (inaudible) that's pending

3    in that case.

4      THE COURT: Okay. What we might refer to here as a

5    motion to dismiss, right?

6      MR. YARDLEY: That's right, yes. That's Tom Yardley

7    speaking.

8      THE COURT: Okay. They don't do -- they're not doing

9    discovery there because the motion to dismiss is pending.

10      MR. YARDLEY: That's correct, Your Honor.

11      THE COURT: Okay. What's the overlap between these

12    two cases here? I mean, I don't know what that complaint looks

13    like. Defendant, I think, characterizes it or maybe the joint

14    status report characterizes it as almost a mirror image of this

15    case, although that can't be because, you know, Data Interfuse

16    is the plaintiff there, is that right, Mr. Herman?

17      MR. HERMAN: Yes, Your Honor. This is Mr. Herman.

18      THE COURT: And what are you alleging there?

19      MR. HERMAN: We are not counsel for Data Interfuse in

20    that case, but I do know that the allegations include -- well,

21    they are unrelated to the allegations in this case. In that

22    case, it is a breach of contract for the payment for work done

23    that OTR has not yet paid Data Interfuse for. There is an

24    allegation of fraud on behalf of OTR's president, Mr. Braun.

25    That's an allegation of breach of contract on behalf of

1  Mr. Carl Meyer, who was an employee of Data Interfuse but left
2  to go work for OTR right around the time the relationship
3  between the parties ended, and there is a claim for tortious
4  interference of a business expectancy.
5           THE COURT:  Okay.  Got it.  Thank you.
6           MR. TZUR:  This is Mr. Tzur, Your Honor.
7           THE COURT:  Go ahead.
8           MR. TZUR:  So Paul Tzur, Your Honor.  Docket entry 14
9  is a filing by defendants in connection with or in response to
10 an objection leveled by the plaintiff earlier in this case.
11 The only reason I reference it is docket entry 14 talks a
12 little bit more about the complaint and actually attaches at
13 docket entry 14-1 the Virginia complaint.  So if you'd like to
14 look at it, it is part of the docket in this case.
15          THE COURT:  Got it.  Thanks, Mr. Tzur.
16          MR. YARDLEY:  And one other -- Tom Yardley speaking.
17 One other update, Your Honor, is that Mr. Meyer is the only
18 defendant who's been served in that case.  So my client has not
19 been served in that case.
20          THE COURT:  Okay.  Let me make a note here.
21      (Brief pause.)
22          THE COURT:  Okay.  I wanted to ask a little bit about
23 the damages in this case.  Mr. Yardley, in reading the
24 complaint, I see one element of damages is 70,000, just under
25 the jurisdictional limit, 70,000 that OTR spent to correct some

1  problems that you allege were caused by the defendant.  Then

2  you had, you know, 24 hours here or a couple of days there,

3  some time that you had to be completely offline or shut down

4  because of the problems that you allege DI inflicted on you.

5  Can you -- and it says, you know, "damages according to proof."

6          Is this just in kind of broad terms, is this a five,

7  six, seven, eight, or nine-figure case from OTR's perspective?

8  I'm just trying to get a sense of what's at issue here.

9          MR. YARDLEY:  The damages, Your Honor, would be the

10 amount of time, the amount of time that we were down to the

11 extent that the violations of the statute can be linked to

12 taking our system down, and then the expert -- the cost in

13 getting it back up and running and identifying the improper

14 access to our accounts.  Then what we don't know is while they

15 were being improperly accessed was anything taken.  We haven't

16 been able to identify whether anything was downloaded as a

17 result of the improper action.

18         THE COURT:  Okay.  So if anything was downloaded, you

19 would say potentially at least that you have larger damages, or

20 you don't really know that.  So I guess my question to you is,

21 broadly speaking -- and maybe your answer to this is a simple

22 "I don't know" -- from plaintiffs' perspective, is this a five,

23 six, seven, eight, nine, ten, 11, or 12-figure case?

24         MR. YARDLEY:  It would in my mind be in the hundreds

25 of thousands, in the low hundreds of thousands.

1          THE COURT:  Okay.

2          MR. YARDLEY:  That's my estimate, Your Honor.  Tom

3     Yardley speaking.

4          THE COURT:  Okay.  That helps me in terms of

5     proportionality, among other things.  I don't think DI has

6     filed a counterclaim in the case, right, Mr. Tzur or

7     Mr.  Herman?

8          MR. HERMAN:  Yes, Your Honor -- and this is

9     Mr. Herman -- that's correct.  There are no counterclaims

10    filed.

11         THE COURT:  Because your clients' damages for

12    non-performance or for breach are what you're seeking in

13    Virginia, right?

14         MR. HERMAN:  Yes, Your Honor, that's correct.  This is

15    Greg Herman.

16         THE COURT:  And when you say you're not counsel, does

17    that mean Blank Rome is not counsel or just not you in the

18    Blank Rome office?  Is it a different law firm?

19         MR. HERMAN:  Yes, Your Honor.  This is Greg Herman.

20    It is a different law firm that represents Data Interfuse in

21    that case.

22         THE COURT:  Okay.  Thanks.

23         Then there was mention in an old status report and

24    then in the new one that OTR is going to be filing an amended

25    complaint by October 26th, which date has come and gone without

1    an amended complaint filed.  Because the defendants have

2    answered or the defendant has answered, you would have to file

3    a motion for leave to file an amended complaint.  What's the

4    status on that?  Is OTR still planning on filing an amended

5    complaint?  If so, what's the gestational period on that

6    complaint for a motion at least before the district court

7    judge?

8         MR. YARDLEY:  To the extent that we would be filing an

9    amended complaint, we would be seeking leave from the district

10   judge very quickly.  The issue we have, Your Honor, is there's

11   some other data that was deleted.  At least from our

12   perspective, we have accounts and notices to show that the

13   defendants have been deleting data as recently as the last ten

14   days.

15        THE COURT:  Okay.  I'm just going to make an

16   observation here.  I know the parties are really at odds here,

17   you know, from reading the docket and the Rule 11 notices, and

18   I think we maybe have had one other interchange here where

19   folks, you know, indicated that everybody was not feeling great

20   in the sandbox here.

21        I had another one of these cases fairly recently or a

22   similar kind of a case, and they came in all hot and lathered

23   up, including a motion for preliminary injunction, immediate

24   discovery.  It had to do with the potential theft of

25   information from one party to the other.  At least in that

1   case -- and I'm not saying that that kind of model works -- in

2   that case, frankly, the amount in dispute, you know, was not a

3   six, seven, eight, you know, nine-figure case.  It was a more

4   modest amount, more akin to what Mr. Yardley has described at

5   least as of now he and his clients believe the case is worth.

6          Once the lawyers actually got past throwing spears at

7   each other and rocks and bombs and sat down and talked with

8   their clients, they realized that some -- each side had

9   misconceptions about what the other side's issues were, what

10  was happening, what had happened, what somebody had done, what

11  had been taken, what hadn't been taken.  By talking it through,

12  they kind of didn't really need the preliminary injunction, and

13  they kind of had an agreement.

14         You know, the one side that was alleged to be, you

15  know, stealing the recipe for Coke, they really hadn't stole

16  the recipe for Coke.  They were willing to provide information

17  and access and so forth, and the parties finally resolved it,

18  you know, after a lot of slogging.

19         I don't need a response on that.  I'd just say

20  sometimes, you know, rather than throwing stuff at each other,

21  it could help to talk, and then you might get through a lot of

22  stuff.  Certainly in a case where, you know, I would think

23  attorney's fees would be an issue for both sides here, it might

24  behoove you at least to try and do that.  But I'm not right now

25  forcing anybody to do it.  I'm just making an observation based

1  on where I sit, and I could be completely misreading the
2  situation.

3       MR. TZUR:  Your Honor, can I?  This is Paul Tzur.  If
4  I may, Judge, it's Paul Tzur.  Look, I totally hear you and
5  totally get where Your Honor is coming from.  We've actually
6  spent, the attorneys on this call, a bunch of time on the phone
7  talking with each other.  It goes deeper than that in this
8  case, and it really comes down to what we characterize as this
9  (inaudible) bomb allegation by OTR against Data Interfuse and
10 John Lovegrove.

11      The reason why that's so significant, Your Honor, is
12 that that allegation itself caused and is causing significant
13 damage to our clients because of the nature of the work that
14 they do.  That allegation, not a finding on the allegation but
15 the mere allegation, the reputational harm is causing
16 significant damages to our clients which is why we are so
17 insistent, so intent on trying to understand what that one
18 particular allegation is all about, which is why we've been
19 asking for months, literally for months, since July, Your
20 Honor, to see that report, that one report that OTR referenced,
21 as Your Honor noted, in its complaint and referenced in its
22 objection to Greg Herman's motion to appear pro hac vice.

23      We do want to see it because there's one of two
24 possibilities.  Either our clients are right and they had
25 absolutely nothing to do with it and they're sustaining

1  significant reputational harm and significant damage to their

2  business now in a completely unfounded way, or Greg and I are

3  being lied to and we need to know that so we can go back to our

4  clients and woodshed them.

5          That's really what the heart of this issue is.  I

6  think if that issue weren't on the table, Your Honor, what

7  you're talking about is exactly right.  We'd be able to come to

8  the table and maybe resolve this relatively quickly.

9          THE COURT:  Yes, I absolutely sensed that from your

10  status report.  I get that that's a major issue on the defense

11  side.  My observation -- again, we're going to run out of time

12  here because I have a case set at 11:00 here -- my observation

13  stands, perhaps even more so from at least the defense

14  standpoint.  The formal discovery process is not maybe the best

15  way to try and address the issue that you're talking about as a

16  more informal quicker process.

17          But again, if you're not -- if you're getting talk to

18  the hand and you're not able to do that, then it does take two

19  to talk.  I understand that, and I completely -- from reading

20  everything that I read to prepare for today's hearing on the

21  docket, including the status report and your motion, I get

22  that.  I understand that what's motivating the defense on this

23  is the existential, if you will, harm.

24          MR. TZUR:  Right.

25          THE COURT:  Maybe not even existential, real harm

1  based on the business you're in, and I understand that's what's

2  causing consternation.  But again, my comment still stands, but

3  we don't have to --

4  MR. YARDLEY:  Your Honor, can I address that -- and

5  this is Tom Yardley -- for one moment?

6  THE COURT:  You can address it for a moment, and then

7  we're going to move on from that point because I have to get to

8  what I'm going to do about your motion to compel and the stay.

9  MR. YARDLEY:  Okay.  The issue we have, Your Honor, is

10 what the defendants' personnel was doing in our system after

11 the contract ended.  That's the problem here.  That should be

12 as big a reputational risk as anything.  To the extent they

13 went into our system after the contract was over, after we sent

14 them a letter saying to please give all of our data back, their

15 response was:  Well, we deleted all the data that we were

16 contractually obligated to give back, and we say we have

17 authorization to be in it after the contract was over.

18 That appears to be what their answer is.  My client is

19 saying:  What were you doing in there in the first place, at

20 all?

21 That would be as much reputational risk as anything, I

22 think, for a person or an entity in their business to be

23 accessing a client after the contract was over and after we had

24 demanded the return of all the data.

25 On that same point, Your Honor, we've offered to

1    provide them a copy of the report in a settlement conference
2    before Your Honor.  We've been before Your Honor before, and
3    we're highly confident to the extent we produce this report in
4    a settlement conference before Your Honor that this case would
5    end very quickly.  They've declined that offer.

6              MR. HERMAN:  Your Honor, this is Greg Herman.  I just
7    wanted to mention that Mr. Yardley did misrepresent what our
8    positions are.  We have not said that we've accessed the system
9    or were authorized to do so.  We don't know what they are
10   alleging as when and how any access occurred.  We can't respond
11   to it unless we know what this access is.

12             THE COURT:  Okay.  I understand.

13             MR. YARDLEY:  So --

14             THE COURT:  I'm going to cut this piece off.  My
15   comment at the beginning still stands.  You're talking to me
16   about questions that really, I think, the lawyers and their
17   clients should be talking to each other about and you're going
18   to save yourself a whole lot of time and effort on that.

19             You know, also, I'm not sure about the utility,
20   frankly, of an offer that says you'll produce it for a
21   settlement conference but not otherwise.  I don't know.  I can
22   understand some trepidation about that.  Anyway, we're not
23   going to solve this problem.  Everything I hear from you about
24   what you don't know about the other side, what each of you
25   don't know about the other side, it's obtainable information if

1  you'd actually talk to each other, I think.

2  But again, I could be missing something.  You know,
3  sometimes cases even with modest damages need to have, you
4  know, a nuclear bomb and, you know, the full fifth army going
5  at it.  The only problem for your clients is that's the cost.
6  But that's cool.  I'm fine with that.  Everybody can do what
7  they want to do.

8  Let me just look at my notes here real quick.  Two
9  more subjects I want to talk about.  One is you mentioned, you
10  know, this settlement conference, this ephemeral settlement
11  conference, Mr. Yardley.  I can't get you in, you know, on an
12  emergency basis anyway for a settlement conference without a
13  whole lot of confidence that it's going to work.  So, you know,
14  you're probably looking at settlement conferences in front of
15  me, if you want to do it in front of me, sometime in January.
16  I don't know if you can get in front of a third party mediator
17  before then, but I'm not doing anything earlier than that.

18  Also, it didn't make a whole lot of sense to me to
19  have a settlement conference on your, quote-unquote, trade
20  secret claim because you're still, as you said today, missing
21  information about that.  That seems to dovetail with these
22  other claims.  I didn't see why we should bifurcate this.  I
23  don't know how we have a settlement conference, say, on the
24  trade secret claim anyway and leave the unauthorized access to
25  another time.  I don't see those being separable.

1           Am I wrong or right?

2           MR. HERMAN:  Your Honor, this is Greg Herman for

3    defendants.  The parties have discussed that it's not entirely

4    clear from the complaint what alleged trade secrets have been

5    misappropriated or otherwise not returned.  Plaintiff has

6    explained what they believe defendants have and have not

7    returned.  We have discussed this, and we have not yet

8    determined whether we have the information because we are

9    trying to maintain the computer system in the state that it was

10   previously in.

11          So we have decided that that issue can sort of be

12   placed on hold and we can address it with the Court and, if

13   necessary, find a way to look for that data and destroy it

14   pursuant to some sort of agreement.  But I think that any

15   investigation into that data is something that should occur

16   later since the parties have agreed that there is a way to

17   resolve this.

18          THE COURT:  Okay.  I'm not sure I -- okay.  That's

19   fine.

20          MR. YARDLEY:  Well --

21          THE COURT:  Go ahead, Mr. Yardley.  I guess you want

22   your two cents here.  Go ahead.

23          MR. YARDLEY:  No, I don't, Your Honor.  I said given

24   your time frame, we don't have time to respond to that.  That's

25   the bottom line.

1    THE COURT:  Okay.  Great.  Well, let me just say I'm

2  here if everybody needs me, when they agree, when everybody

3  does agree they need me, or you could -- you know, there are

4  other options for that, too.

5    Let's address this motion to compel here.  I know you

6  sent me a proposed briefing schedule.  I wasn't really sure.

7  You know, it's a really, really quick briefing schedule, and it

8  has defendants doing their reply over Thanksgiving.  I just

9  wasn't sure why that needed to be done that way, although I

10  suppose defendant is saying, you know, they're suffering

11  reputational harm here and they've got to get this done as soon

12  as possible.

13    If it has to be briefed, it has to be briefed, I

14  suppose.  Plaintiff wanted to reply by November 23rd and, you

15  know, I guess I don't have a whole lot of problem with that.

16  Mr. Yardley, though, just really quickly, are you -- would your

17  position be opposing a stay here because you want to get moving

18  on discovery as soon as you can?  I mean, the sub-question (b)

19  on that is has plaintiff served any discovery, but are you in

20  agreement with them that discovery should be stayed other than

21  with respect to this expert report, or would you say no, you

22  want to go full speed?

23    MR. YARDLEY:  I think we should move ahead with

24  discovery, Your Honor.  There's one very simple thing we wanted

25  to do discovery on at the outset.  It's their denial that they

1  accessed the database after the contract was over.  What's the
2  basis for that?

3          THE COURT:  Okay.  So have you served discovery trying
4  to get that yet or no?

5          MR. YARDLEY:  No.  Once they filed the motion, Your
6  Honor, we thought that would be inappropriate, not by the rules
7  but just until we heard from you.  We knew we were going to be
8  before you today, so serving discovery while their motion was
9  pending did not seem to be in good faith.

10          THE COURT:  Yes.  Well, I hear you.  On the other
11  hand, they filed their answer on September 17th.  This is
12  November 5th, and they filed their motion, I believe, sometime
13  in late October.  So I don't completely get that.

14          MR. YARDLEY:  We have no problem with -- and again,
15  this is Tom Yardley.  We have no problem with serving
16  discovery, Your Honor.  We just wanted to see what you said
17  today.

18          THE COURT:  Well, it looks like you're going to have
19  to brief this motion, so I'm going to set the briefing schedule
20  you want, including the reply brief for the Monday after
21  Thanksgiving, which is I think where you have it, or maybe that
22  week if that's really what you want to do.  I can't promise you
23  that this is going to be -- that I'm going to get it decided in
24  two days.  But if you want to do that briefing schedule, I'll
25  enter the November 23rd and November 30th dates that you've

1  suggested, and then I will rule either by the ECF system or
2  orally in a hearing.

3        I will say this on the motion to stay.  Discovery is
4  not stayed.  There's a motion to stay it.  Frankly unlike what
5  you've referenced in the Virginia case, the state court case,
6  our culture here and our practice generally in the Northern
7  District of Illinois is not to stay discovery while a motion is
8  pending, while a motion to dismiss is pending, and we don't
9  have a motion to dismiss here.

10       So from reading the motion, just from a reading of the
11 defendants' side as to why discovery should be stayed, I was
12 not moved on that, and I'm still not moved on that even more so
13 in hearing what the parties are at issue on here.  I don't know
14 that just getting this expert report is the only discovery that
15 needs to be done.  It can be prioritized in discovery, you
16 know.

17       I imagine defendant hasn't served any discovery,
18 either.  In fact, you're moving to compel this expert report, I
19 take it, Mr. Herman or Mr. Tzur, and you haven't even served a
20 request for production of documents for that report, right, and
21 that report is not listed in their 26(a)(1) disclosures?

22       So three questions -- or two questions.  You haven't
23 asked for production of that report in a Rule 34 request,
24 correct?

25            MR. HERMAN:  Yes, we have, Your Honor.  This is Greg

1  Herman.  We served requests, and OTR has indicated that they

2  would not produce the report.

3  THE COURT:  Okay.  So when did you serve your

4  discovery?

5  MR. YARDLEY:  My understanding --

6  MR. HERMAN:  I believe they were served on -- this is

7  Greg Herman.  I believe they were served on October 26th, yes.

8  THE COURT:  Okay.  So the time to respond, the time

9  for OTR to formally respond in writing to your request has not

10 yet passed, correct?

11 MR. HERMAN:  Yes, Your Honor, that is correct.  This

12 is Greg Herman.

13 THE COURT:  But it's your understanding from

14 Mr. Yardley that they've told you they're not going to produce

15 the report you're looking for, or reports.  I guess in what

16 I've read it's not clear if there's one or multiple reports.

17 Mr. Yardley, is it right you've told them:  We've got

18 30 days to respond, but we're not producing that report?

19 MR. YARDLEY:  They asked to have a conference on it,

20 and we've been trying to discuss things with them as they come

21 along in a way to expedite things.

22 THE COURT:  Okay.  I'd move to strike that as

23 non-responsive.  I would just note for the record here that

24 nobody has had what I consider a Local Rule 37.2 conference.  I

25 mean, this is like -- I mean, Mr. Tzur, I'm not trying to say

1   this in any disrespect. I'm actually trying to say it because
2   I think it's a little funny but is emblematic of U.S. Attorneys
3   who go into private practice. You don't have the grand jury
4   anymore. You've got the Federal Rules of Civil Procedure. So
5   usually I see motions to compel. Somebody serves a request for
6   production and the other side responds and says: I'm not going
7   to give it to you.

8           Then you have a Local Rule 37.2 conference. In our
9   district here, that's mandatory on a discovery motion. This is
10  a discovery motion, and that whole thing has not yet occurred,
11  though maybe it's just a formality because they've told you.
12  You know, Mr. Yardley has said they didn't identify the report
13  in their 26(a)(1) disclosures because they're not going to rely
14  on it and they didn't identify the forensic expert because
15  they're not going to rely on him.

16          You look at that askance and say: Really? You allege
17  it in your complaint.

18          So I get that, but I can deal with that all when I get
19  the motion or when you brief your motion which you're all
20  aching to do.

21          MR. TZUR: Judge, this is Paul Tzur again. Two quick
22  responses. One, there's not a day that goes by that I don't
23  miss the grand jury and the grand jury process. You know,
24  you're exactly right about that. But, two, you're hitting the
25  nail on the end about the reason why we didn't wait the 30 days

1   for the motion. It was a futility point. They had told us

2   frankly before we even served the discovery in an email. I

3   can't remember if we attached the email to our motion, but they

4   told us they weren't producing this report, period. So we saw

5   it under 37.2 as a futility point, and we didn't need to wait

6   the 30 days because they were going to maintain that position

7   the whole way through.

8           THE COURT: Okay. But Mr. Yardley in the response

9   that I moved to strike didn't seem to confirm that they weren't

10   producing it. Maybe he's rethinking it based on, among other

11   things, your motion. He said he wants to meet and confer, and

12   you haven't done that. But you guys can meet and confer in a

13   nanosecond on that.

14           Okay. I have another case set for hearing, and

15   they're already nine minutes late. So I've covered my agenda.

16   I'll set your November 23rd and November 30th dates, and I'll

17   rule as soon as I can on that, you know, consistent with

18   everything else.

19           Anything more from you, Mr. Yardley?

20           MR. YARDLEY: No, Your Honor.

21           THE COURT: Mr. Herman or Mr. Tzur?

22           MR. HERMAN: Yes, Your Honor. This is Mr. Herman.

23   Just one sort of housekeeping issue. There's a little

24   confusion among the parties on one of the dates from the

25   schedule, and that is the deadline for written discovery

1  requests needing to be served before December 1st. I wondered
2  if it was possible that the Court possibly interpreted our
3  proposed deadline of January 3rd as being the deadline to
4  respond to written discovery.

5          THE COURT: Hold on. Let me go into the -- let me get
6  into this.

7          (Discussion off the record.)

8          THE COURT: Let me look at this because this was
9  actually something I wanted to raise with the parties. I was
10 imagining that I got the motion to stay because I had set that
11 date. The reason I set that date is because you gave me a date
12 for initial disclosures and I thought what you gave me was a
13 date for discovery close. Because that discovery -- normally
14 what I do is I'll set those two dates that the parties suggest,
15 but I want a date by which we have to start the discovery
16 process so that if you're closing discovery on January 3rd you
17 don't serve discovery on December 3rd.

18         So let me look at that order now. That's really why I
19 put the 12/1 date in there. You've already -- I know defendant
20 has already served. To be clear -- and I can put this in my
21 order -- the Court does not view the pending motion to stay to
22 preclude any party from serving written discovery.

23         So, plaintiff, if you want to serve, you can go ahead.
24 I know there's a motion to stay pending but, you know, that has
25 to be granted in order for that to stop.

1           Then you're saying your proposal is --

2           MR. HERMAN:  It was January 3rd for that.

3           THE COURT:  Yes.  Did I misinterpret your proposal?

4   Yes, I did misinterpret that, and in part the December 1 date

5   is calibrated to -- if you're closing written discovery on

6   January 3rd, you're going to have to serve it before then.  Did

7   you mean to say in there to serve written discovery?

8           MR. HERMAN:  Yes, Your Honor, we did, and I confirmed

9   that with plaintiff as well.  This is Greg Herman.

10          THE COURT:  Okay.  So that's a typo on your side,

11  right?

12          MR. HERMAN:  Yes, Your Honor.

13          THE COURT:  And both parties -- Mr. Yardley, do you

14  agree, notwithstanding you want to get going and

15  notwithstanding that the defendant already served written

16  discovery?

17          Mr. Herman, you've already served written discovery,

18  so you're requesting -- there could be more written discovery,

19  right?

20          MR. YARDLEY:  Yeah.

21          MR. HERMAN:  Yes, sir.

22          MR. YARDLEY:  Tom Yardley speaking.  I don't believe

23  that they served -- they served discovery on one issue, I

24  think, is my understanding.

25          THE COURT:  Okay.

1    MR. HERMAN:  Yes, Your Honor, that's correct.

2    MR. YARDLEY:  So they have not -- this is Tom Yardley

3    again.  They have not served discovery on anything other than

4    the production of the report.

5    THE COURT:  Okay.  So the proposal is to serve the --

6    the last day to serve written discovery will be January 3rd,

7    and two months later you're closing fact discovery.  So you're

8    giving yourself 60 days to take any depositions, although you

9    could take depositions before then, too, right?

10    MR. YARDLEY:  That's correct, Your Honor.  But we're

11    going to serve discovery here soon after this call, and that

12    would give us three months.

13    THE COURT:  You know what?  My order is going to

14    stand, folks.  I mean, you know, I'm hearing both sides want to

15    go racing.  You know, everybody wants to do Formula I racing

16    here, but you want to have up until January 3rd with a March

17    1st close date to serve written discovery and I don't think

18    that works.

19    So my order will stand that written discovery has to

20    be served by December 1.  That accommodates everything you all

21    want.  Serve the discovery.  I don't know when you're

22    responding and I know I have a motion to stay pending which

23    will be fully briefed on November 30th, but unless and until

24    I'm staying everything, which I will tell you as I told you, I

25    could be convinced otherwise when I read these briefs, but I

1  would probably be inclined not to do that.  I think you ought

2  to get your discovery out there and get it moving if you can,

3  full stop.  So my December 1st order stands.  Okay?

4          Anything more from the defense?

5          MR. HERMAN:  No, Your Honor.  This is Greg Herman.

6          THE COURT:  Okay.  Have a good day, everybody.  I'll

7  see you when I see you.  My order might include a date for an

8  updated status report or it may not, but I'll pick that date.

9  If you have a problem with it, you can talk to -- you can let

10  Brenda know.

11          Anyway, we'll close this hearing.  It was a good

12  hearing.  I got a lot of information.  I understand the case

13  better.  Hopefully you got some information, too.  Okay.  So

14  over and out.  Think positive.

15          MR. TZUR:  Thank you.

16          MR. YARDLEY:  Thank you, Judge.

17          THE COURT:  Okay.  Bye.

18      (Proceedings concluded.)

19              C E R T I F I C A T E

20          I, Patrick J. Mullen, do hereby certify the foregoing
    is an accurate transcript produced from an audio recording of
21  the proceedings had in the above-entitled case before the
    Honorable SARA L. ELLIS, one of the magistrate judges of said
22  court, at Chicago, Illinois, on November 5, 2021.

23                          /s/ Patrick J. Mullen
                            Official Court Reporter
24                          United States District Court
                            Northern District of Illinois
25                          Eastern Division