IN THE UNITED STATES DISTRICT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OTR TRANSPORTATION, INC., an Illinois Corporation, | |
| Plaintiff, | Case No. 21 CV 3415 |
| v. | |
| DATA INTERFUSE, LLC, a Virginia limited liability company, and JOHN LOVEGROVE, an individual, | Magistrate Judge Jeffrey T. Gilbert |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff OTR Transportation, Inc., alleges that Defendants Data Interfuse, LLC ("Data Interfuse") and one of its employees, John Lovegrove, accessed its computer systems surreptitiously and without Plaintiff's authorization after Plaintiff terminated its business relationship with Data Interfuse. Complaint [ECF No. 1] at ¶¶ 48–50; First Amended Complaint [ECF No. 39] at ¶¶ 48–50. Plaintiff further alleges that Defendants used this unauthorized access to view OTR's operations, including the status of the proprietary software OTR was building, to change, modify, add, delete, and/or destroy information stored in Plaintiff's database, and to plant a "logic bomb" that, when triggered, effectively shut down Plaintiff's operations for at least two full days. Complaint [ECF No. 1] at ¶¶ 49–66, 76–85, 107, 108, 132, 135; First Amended Complaint [ECF No. 39] at ¶¶ 49–61, 72–80, 104, 129.

Plaintiff initially referenced the findings of its expert consultant as support for many of the allegations it made in its original complaint. Complaint [ECF No. 1] at

¶¶ 56, 57, 60, 61, 63, 64, 84, 102, and 126. After Defendants filed their Motion seeking to compel Plaintiff to produce its consultant's report, however, Plaintiff was given leave to file an amended complaint, in which it removed or altered some of its original allegations and eliminated its attribution of some facts to the expert consultant. The word "expert" appears only twice in the First Amended Complaint [ECF No. 39] at ¶¶ 72, 79, whereas it appeared numerous times in Plaintiff's original complaint. Complaint [ECF No. 1] at ¶¶ 56, 57, 60, 61, 63, 64, 84, 102, 126. But the essence of Plaintiff's allegations that Defendants gained unauthorized access to Plaintiff's computer system, changed, modified, added, deleted, and/or destroyed data, and planted a logic bomb in Plaintiff's computer system remain the same.

Defendants filed a Motion to Compel and Partially Stay Discovery [ECF No. 25] ("Motion") in which they ask the Court to compel Plaintiff to produce the report prepared by Plaintiff's expert consultant and upon which Plaintiff relied for certain allegations in its Complaint. Plaintiff argues the report is protected by the attorney work product doctrine and need not be produced to Defendants. Defendants say the report was prepared in the ordinary course of Plaintiff's business and is not attorney work product. But even if it is, Defendants argue that Plaintiff waived any work product protection by relying upon and referencing its expert's findings and report in not only its Complaint and First Amended Complaint, but also in other court filings and oral representations during motion and status hearings.

The Court has reviewed all the parties' briefs filed in connection with the Motion [ECF Nos. 25, 27, 31, 41, 46], as well as the contract that Plaintiff entered with its consultant on February 26, 2021, and the consultant's final report dated May

19, 2021, both of which were submitted for the Court's *in camera* review pursuant to orders entered on January 10 and 20, 2022 [ECF Nos. 45, 48]. Based on the Court's review of those materials and for the reasons discussed in this Memorandum Opinion and Order, Defendants' Motion is granted in part and denied in part.

## I.

First, Plaintiff has not shown that its consultant's report is protected attorney work product prepared in anticipation of litigation. As this Court explained in *Baxter Int'l Inc. v. AXA Verischerung*:

> "The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3)." *Charvat v. Valente*, 82 F.Supp.3d 713, 718 (N.D. Ill. 2015), *objections overruled*, 2016 WL 98570 (N.D. Ill. 2016). The doctrine "is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010). To that end, the doctrine protects documents prepared "in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Id.* at 618....A document need not be prepared solely for the purpose of litigation to merit protection; rather, "the primary motivating factor in *preparing the document* must be the anticipation of litigation." *Heriot v. Byrne*, 257 F.R.D. 645, 664 (N.D. Ill. 2009) (emphasis in original). That means the work product doctrine does not shield from production "documents that are created in the ordinary course of business or that would have been created irrespective of litigation." *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000); *see also Sandra*, 600 F.3d at 622; *Med. Assur. Co. v. Weinberger*, 295 F.R.D. 176, 183 (N.D. Ind. 2013)."

320 F.R.D. 158, 162–63 (N.D. Ill. 2017).

Plaintiff's litigation counsel executed the contract with Plaintiff's consultant "as counsel to and on behalf of Customer." Statement of Work (submitted *in camera*)

at 1.[1] The "Customer" is defined as Plaintiff itself. The scope of work to be provided is characterized as "security consulting solutions" and the consultant agrees to provide "security services" to the Customer. While the agreement also says that "[t]he Services [are] to be performed under Outside Counsel's direction [and] are to assist Outside Counsel," and that the consultant understands that the "Services are intended to be subject to the attorney-client and work product privileges," *id.*, that language does not convert a business services engagement into protected attorney work product. Moreover, it appears largely to be window dressing. Plaintiff's chief financial officer avers that Plaintiff's counsel did not see all the work product generated by Plaintiff's consultant and only relied upon "certain portions of one of the [consultant's] status updates when it drafted the complaint." Ryan Declaration [ECF No. 27-1] at ¶¶ 26–28. The consultant's final report states explicitly that "[t]his document has been prepared solely for the use of the Customer and its officers, directors, and employees. No other third party shall be entitled to rely upon this document." Digital Forensics Analysis Services Report at 1. As Judge Moran said in *G.M. Harston Constr. Co v. City of Chicago,* "[r]outing . . . information through attorneys no more confers protection than having an attorney prepare tax returns protects the resulting work papers." 2001 WL 817855, at *2 (N.D. Ill. 2001) (citing *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999)).

---

[1] The Statement of Work references a "separately signed agreement executed by the parties that expressly authorizes Customer to order the services described herein" and a "Customer Relationship Agreement" but those documents were not submitted for *in camera* review.

Further, Plaintiff's Complaint, written submissions, and other representations to the Court confirm that Plaintiff hired its consultant primarily for a business purpose. Plaintiff alleges it hired a forensic computer expert "to investigate the cause of the problem that shut down OTR's software program," and "to first repair its computer system, and then conduct a forensic analysis to uncover the unauthorized back-door access points installed by Defendants and to track and identify the logic bomb as the cause of the shutdown of the company computer system." Complaint [ECF No. 1] at ¶¶ 56, 84; *see also* Plaintiff's Objection to Motion for Leave to Appear Pro Hac Vice [ECF No. 12] at ¶ 11 ("Plaintiff hired a nationally recognized forensic computer consultant to assist with the repairs necessary to restore Plaintiff's proprietary computer and to investigate the cause of OTR's computer meltdown."). The Court's *in camera* review of Plaintiff's contract with its consultant and the consultant's work product confirms the gist of what Plaintiff alleged in its Complaint and what it has represented to the Court: the primary reason Plaintiff hired the consultant immediately after it discovered Defendants had gained unauthorized access to Plaintiff's computer systems was to identify the problem that shut down Plaintiff's computer system, to help Plaintiff fix the problem, and to conduct an analysis into what had caused the problem. As discussed above, "the work product doctrine does not shield from production "documents that are created in the ordinary course of business or that would have been created irrespective of litigation." *Baxter,* 320 F.R.D. at 162–63.[2]

---

[2] Plaintiff says it would have handled the computer issues it attributes to Defendants itself but for the lawsuit it intended to file against Defendants. The Court has no way of assessing

Plaintiff argues that it already had been sued by Data Interfuse in Virginia when it hired its expert consultant, and it anticipated filing an affirmative claim against Defendants arising from their obtaining unauthorized access to Plaintiff's systems when it hired the consultant. According to Plaintiff, that means the consultant was hired in anticipation of litigation and the consultant's report therefore constitutes attorney work product. Even if Plaintiff intended to rely upon the consultant's work in this or other litigation, however, that does not insulate the consultant's work product from discovery in this case. That means only that, at best, the consultant was hired for a dual purpose. Plaintiff's statements in its Complaint and in its representations to the Court as to why it hired the consultant are consistent with the documents the Court reviewed *in camera*: the consultant was hired primarily to help Plaintiff identify and diagnose the problems Plaintiff alleges that Defendants created for their software system, and potentially but secondarily to assist Plaintiff in existing or potential litigation with Defendants. Such dual-purpose retentions and the work product associated with them are not protected attorney work product. *Baxter,* 320 F.R.D. at 163; *G.M. Harston Constr. Co.,* 2001 WL 817855, at *2.

## II.

Second, even if Plaintiff's expert's report is protected work product, Plaintiff waived any such protection by citing to and relying upon its expert's opinion in its original Complaint, in other filings with the Court, and in statements made to the

---

the veracity of that representation. The record evidence discussed in this Memorandum Opinion and Order, however, does not support the conclusion that Plaintiff hired its consultant primarily for the purpose of litigation.

6

Court during motion and status hearings. Plaintiff explicitly based its Complaint on what it alleges it was told by its forensic expert. Complaint [ECF No. 1] at ¶¶ 56, 57, 60, 61, 63, 64, 84, 102, and 126. In fact, on October 1, 2021, Plaintiff's counsel told the presiding District Judge that, "we have an expert report from a nationally-known forensic expert that charges $50,000 to provide the basis for our complaint." Transcript of 10/2/21 Hearing [ECF No. 31-1] at 4. The gist of those allegations remain in the First Amended Complaint, but now without express attribution to Plaintiff's consultant. First Amended Complaint [ECF No. 39] at ¶¶ 72–80, 104, 129. Plaintiff's filing of an amended complaint does not shield Plaintiff from having to disclose the expert's work on which Plaintiff's claims originally were, and to some extent appear to continue to be, based.

Plaintiff appears to argue that its claims no longer are based on what it learned from its expert consultant except in a limited respect. Plaintiff's Response [ECF No. 27] at 14 ("…OTR only reviewed portions of one version of its expert's status update report when it drafted the Complaint."); Ryan Declaration [ECF No. 27-1] at ¶ 35 ("OTR's proposed amended complaint does not rely on or seek to use any findings or opinions of OTR's consulting experts."). Plaintiff now says, for example, that its outside expert initially agreed with Plaintiff's internal experts about the nature and effect of a "logic bomb" that Plaintiff alleges Defendants implanted in their computer system, but that the external expert changed its opinion about the nature of the so-called "logic bomb" just before Plaintiff filed its Complaint. Transcript of 12/22/21 Hearing [ECF No. 38] at 5–7. The logic bomb allegations, however, remain in the First Amended Complaint. First Amended Complaint [ECF No. 39] at ¶¶ 72, 73, 79,

7

104, 129. In the Court's view, therefore, Plaintiff's consulting expert's report remains relevant to those allegations and to others in the First Amended Complaint that appear to be the same as allegations made in Plaintiff's original Complaint that were then attributed to Plaintiff's expert.[3]

Plaintiff's reliance on its consultant for certain facts alleged in its Complaint and First Amended Complaint waived any work product protection that may have existed (though the Court emphasizes here that it has determined no work product protection existed here in the first place). *Beaton v. SpeedyPC Software,* 2017 WL 11625792, at *5 (N.D. Ill. 2017). ("…Beaton has affirmatively relied on the opinions of his expert to support his Complaint."); *see also, Worley v. Avanquest North America Inc.,* 2013 WL 6576732, at *4 (N.D. Cal. 2013). Although Plaintiff parses which facts it originally relied upon and those it says it is now relying upon that come from its consulting expert, its arguments in this regard have been a moving target and it is not now entirely clear precisely which portions of either the original or amended complaint are attributable in whole or in part to Plaintiff's consultant's work. Transcript of 12/22/20 Hearing [ECF No. 38] at 5–7. In the Court's view, as discussed in more detail below, it is very reasonable to believe based on the record evidence to date that Plaintiff relied to some extent on its consultant's reports for the allegations in its Complaint and that the reports contain information that is relevant to the claims or defenses in this case even after the filing of the First Amended Complaint

---

[3] For example, compare Complaint [ECF No. 1] at ¶ 61 ("OTR's expert discovered that a 'logic bomb' was planted in OTR's system") with First Amended Complaint [ECF No. 39] at ¶ 51 ("DI and Longrove used the unauthorized peering sessions and/or backdoor access points to intentionally disable security and/or install a logic bomb into OTR's system").

8

such that production of those documents is proportional to the needs of the case within the meaning of Federal Rule of Civil Procedure 26(b)(1).

Although Plaintiff attempts to distinguish *Beaton* and *Worley* as limited to situations in which a party relies upon an expert's report to oppose a motion to dismiss or for summary judgment, those cases are not so limited and, instead, appear to be on all fours with this case. Indeed, Judge Beeler in *Worley* seemingly addressed the argument Plaintiff is making here and held that a plaintiff's reliance on its expert to support its operative pleading opened up discovery into the expert's work product: "[t]he reasoning behind those opinions—that if a party uses a consulting expert's statements, findings, or opinions in a filing, that party has put the expert's statements, findings, or opinions into the judicial arena and the opposing side may take discovery about those statements, findings, or opinions—applies equally in this context, where Plaintiffs very clearly rely upon their expert's investigation to support the claims in their First Amended Complaint." *Worley,* 2013 WL 6576732, at *4. This Court finds the reasoning in *Beaton* and *Worley* to be persuasive and applicable here.

### III.

Third, the discovery Defendants are seeking here is not rendered irrelevant or superfluous because Plaintiff filed an amended complaint. Although an amended complaint supersedes a prior complaint, that does not mean that discovery into facts or other matters contained in the original pleading may not be relevant to a claim or defense or proportional to the needs of the case within the meaning of Federal Rule of Civil Procedure 26(b)(1). *See, e.g., Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 640 (7th Cir. 2004) ("statements made in superseded or withdrawn

pleadings constitute 'evidentiary,' as opposed to 'judicial,' admissions which may be controverted or explained by the party") (citing 30B Michael Graham, Federal Practice and Procedure § 7026 (interim ed. 2000)); *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961) ("Upon a trial of the issues raised by the pleadings, including the amended complaint, a complaint superseded thereby might well be offered in evidence by the defense if it contains material admissions by the plaintiffs named in the amended complaint. Such evidence would be admissible in order to enable the court to determine facts upon the issues being tried. Conversely, upon the trial, plaintiffs would be permitted to show by evidence the explanation, if any there be, as to why the facts relied on by defendants as admissions were stated in the amended complaint differently than the way in which they were stated in the original complaint.").

It is not clear whether Defendants will seek to use statements made in Plaintiff's original complaint as technical party admissions or for some other purpose, such as for impeachment or to refresh recollection. *See, e.g., 188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730, 736 (7th Cir. 2002) ("Under some circumstances, a party may offer earlier versions of its opponent's pleadings as evidence of the facts therein, but they are not judicial admissions, and the amending party may offer evidence to rebut its superseded allegations."); *Davis v. Freels,* 583 F.2d 337, 342 (7th Cir. 1978) ("[Plaintiff] argues that the trial court erred in allowing [defendant's] counsel to introduce portions of [plaintiff's] original complaint…'even though that claim was not a part of the Amended Complaint, which was the basis for the trial.'…However, for the purpose of impeaching [plaintiff's] credibility, [defendant]

could properly rely on material admissions by [plaintiff] in his original complaint. (citing *Nisbet v. Van Tuyl*, 224 F.2d 66 (7th Cir. 1955)). Nevertheless, the cases cited above broadly stand for the proposition that the filing of an amended pleading does not foreclose discovery into statements made in a prior pleading. "Rule 26(b)(1) expressly provides that evidence need not be admissible to be discoverable. The only question then is whether the discovery sought meets the standard set out in Rule 26(b)(1) for relevance and proportionality." *Arcelormittal Indiana Harbor LLC v. Amex Nooter, LLC*, 2016 WL 614144, at *6 (N.D. Ind. 2016). In the instant case, the Court can see how Plaintiff's consulting expert's report concerning its analysis and investigation of the problems with Plaintiff's computer system that Plaintiff alleges were created by Defendant's unauthorized intrusions, which the Court has found are not protected from disclosure by the work product doctrine, could be relevant and proportional to the needs of this case even though Plaintiff claims to have walked back its reliance on its consulting expert to some extent in its amended complaint.

## IV.

Fourth, Defendants seek production not only of Plaintiff's expert's report,[4] but also more broadly "[a]ll documents, correspondence and things relating to the Expert Report," "[a]ll documents, correspondence and things relied on for the statements, conclusions, discoveries, findings and/or opinions in the Expert Report," and "[a]ll documents, correspondence and things relied upon by the Expert for statements,

---

[4] Plaintiff's RFP No. 1 seeks "[t]he Expert Report" which is defined as "the expert report that counsel for OTR represented to Defendants and to the Court served as the basis for allegations in the Complaint." [ECF No. 25-1] at 4.

11

conclusions, discoveries, findings and/or opinions that OTR relied on for its allegations in the Complaint." [ECF No. 25-1] at 5 (Defendants' Requests for Production ("RFPs") Nos. 2, 3, and 4). Defendants also are asking the Court to order Plaintiff to produce "[a]ll documents, correspondence and things relied upon for the allegations in the Complaint." *Id.* (RFP No. 5). Defendants' RFPs are very broad. More to the point, however, it is not clear that Plaintiff is refusing to produce anything other than the Expert Report as defined in the RFPs. In fact, Plaintiff says that it will be producing to Defendants all the raw data that its consulting expert analyzed throughout its engagement. Ryan Declaration [ECF No. 27-1] at ¶¶ 36–37. One also would think that Plaintiff will be producing documents it is relying upon for its allegations against Defendants. Therefore, there appears to be no need at this point in the litigation to order Plaintiff to produce all the documents sought by Defendants' RFP Nos. 2–5, particularly until it is clear what Plaintiff will be producing and what it will not be producing in response to Defendants' RFPs.

The Court will order Plaintiff to produce the Expert Report as defined in Defendants' RFP No. 1. [ECF No. 25-1] at 4. As defined, to be clear, that includes any expert report that "served as the basis for allegations in the Complaint." Defendants' RFPs [ECF No. 25-1] at 4 (definition of "Expert Report"). Plaintiff also shall produce the final report that Plaintiff submitted to the Court for *in camera* review per the Court's order of January 20, 2022, which required Plaintiff to submit for *in camera* review "the document Plaintiff characterizes as its "consulting expert report." [ECF No. 48]. For the avoidance of doubt, Plaintiff shall produce the complete version(s) of the Expert Report sought by Defendants' RFP No. 1 and not just the portions of the

Expert Report, again as defined, that Plaintiff will say its attorneys relied upon in drafting the Complaint. As explained above, the extent to which Plaintiff says it relied on its consultant in drafting its Complaint and First Amended Complaint has been a moving target and is the subject of some dispute. In the Court's view, therefore, production of the complete version of the Expert Report is necessary to provide Defendants with context for the consultant's work and to avoid parsing of words, phrases, or sentences that the Court fears would occur if the entire report is not produced, as well as to avoid future motion practice about the completeness of Plaintiff's production of the Expert Report as defined by Defendants. For context and completeness, the Court also orders Plaintiff to produce the contract with its consultant that it submitted for *in camera* review per the Court's order of January 10, 2022 [ECF No. 45]. Again, in the absence of any privilege against production, this is a relevance inquiry and these materials, in the Court's view, may contain relevant information and their production is proportional to the needs of this case.

Finally, and to be clear, the Court is not saying at this juncture that Defendants eventually might not be able to make out a good case for production of more documentation relating to Plaintiff's expert consultant or its work or reports. But the record developed on Defendants' Motion as of now does not convince the Court that production of all the material Defendants seek in their broad RFPs is proportional to the needs of the case or, if it is, that Plaintiff is refusing to produce that material at this time.

## V.

Fifth, Defendants' request for a partial stay of discovery until it sees the Expert Report is denied. When Defendants first filed their Motion, Plaintiff had not yet sought leave to file an amended complaint. That amended complaint and Plaintiff's briefs filed in opposition to Defendants' Motion make clear that Plaintiff intends to pursue this litigation without, at least according to Plaintiff, directly relying upon its consultant's work or report. In the Court's view, this litigation will proceed apace after Plaintiff produces its Expert Report and the Court sees no reason to pause or defer fact discovery generally, at least as of now, just because it is now ordering Plaintiff to produce the Expert Report.

Accordingly, for all these reasons, Defendants' Motion to Compel and Partially Stay Discovery [ECF No. 25] is granted in part and denied in part.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 1, 2022