UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OTR TRANSPORTATION, INC., | |
| Plaintiff, | No. 21 C 3415 |
| v. | Judge Thomas M. Durkin |
| DATA INTERFUSE LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

OTR Transportation contracted with Data Interfuse to help develop a software program to manage OTR's freight brokering business. OTR alleges that after it declined to renew the contract, Data Interfuse hacked OTR's network and stole its trade secrets. In response, Data Interfuse has filed counterclaims alleging that OTR breached their contract, poached a Data Interfuse employee, and stole Data Interfuse's "protected information." OTR has moved to dismiss Data Interfuse's counterclaims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). That motion is granted in part and denied in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

On November 22, 2019, the parties entered into a contract whereby Data Interfuse agreed to provide software and information technology services to OTR. The contract had a twelve-month term.

According to Data Interfuse, beginning in September 2020, the parties began to contemplate an expanded project. Data Interfuse alleges that at a meeting that month, OTR orally agreed to hire Data Interfuse to work on the expanded project with a term of three years for $1.8 million. After the meeting, OTR paid Data Interfuse $200,000, and Data Interfuse "delivered an operating cost budget to OTR including a new team of eight individuals from [Data Interfuse] who would be needed

2

to implement the OTR Expanded Project." R. 53 at 62 (¶ 23). Data Interfuse then hired the new employees. *Id.* The parties again met to discuss the expanded project in November 2020, with one of Data Interfuse's new employees, Karl Meyer, participating in the meeting. At the meeting, OTR paid Data Interfuse $140,000.

Data Interfuse alleges that immediately after the November meeting, OTR hired Meyer away from Data Interfuse. A week later, OTR told Data Interfuse that it was ending their business relationship.

Contrary to Data Interfuse's claims, OTR alleges that it was dissatisfied with Data Interfuse's work during the term of the first contract. OTR also alleges that the expanded project Data Interfuse proposed was unacceptable because it provided a license to Data Interfuse to use for its own purposes (presumably providing to other clients) the programs Data Interfuse developed for OTR. OTR alleges it did not renew the original contract and did not agree to an expanded project. Rather, OTR contends that upon expiration of the original contract it demanded that Data Interfuse return all confidential information OTR had provided to Data Interfuse during the course of their work. OTR alleges that Data Interfuse failed to comply with this demand.

About two weeks after ending its relationship with Data Interfuse, OTR alleges that it discovered that Data Interfuse was still linked to OTR's database. OTR disabled these links.

Then in February 2021, OTR alleges that it discovered "unauthorized peering sessions" into its database, associated with a contractor for Data Interfuse who had worked on OTR's project. When OTR closed these links, its "operational database was

3

compromised and OTR's proprietary software program [was] rendered inoperable." R. 39 ¶ 54. This disrupted OTR's business for 24 hours. OTR alleges further that Data Interfuse "intentionally set up a network of unauthorized peering sessions, portals and other backdoor access points to intentionally access and acquire without authorization OTR's proprietary electronic data system and otherwise monitor, copy and acquire portions or all of OTR's proprietary company information, pricing modeling system and other pricing and transportation data." *Id.* ¶ 71. OTR described this activity as a "logic bomb." *Id.* ¶ 72. The Court has stricken the allegation of a "logic bomb" and ordered OTR to file an amended complaint omitting that term.

Data Interfuse brings a claim (Count V) for tortious interference with prospective economic advantage, alleging that the "logic bomb" allegation has harmed its reputation and its "ability to maintain needed security clearances" and to retain the clients who require such clearances R. 53 at 66-67 (¶ 52). Data Interfuse also alleges that the "logic bomb" allegation constitutes an abuse of process that violates state law (Count VI). In addition to the alleged harm caused by the "logic bomb" allegation, Data Interfuse brings claims for: (Count I) breach of the original contract, alleging that OTR has failed to pay all invoices; (Count II) breach of the oral agreement to expand the project for $1.8 million; (Count III) breach of Meyer's employment agreement by inducing Meyer to disclose Data Interfuse's "protected information"; (Count IV) fraud for failure to expand the project as contemplated; and (Count VII) for "eavesdropping," alleging that OTR's officer recorded a conversation with a Data Interfuse employee without the employee's permission in violation of

4

Illinois state law.[1] OTR has not moved to dismiss Data Interfuse's claim for breach of the original contract.[2]

## Analysis

I. **Statute of Frauds**

OTR argues that Data Interfuse's claim for breach of the oral contract for the expanded project violates the statute of frauds based on Data Interfuse's allegation that the parties orally agreed to a term of three years. OTR argues that the statute of frauds prohibits enforcement of oral contracts that are "not to be performed within the space of one year."

But the phrase "not to be performed within the space of one year" does not prohibit all oral contracts with a term longer than a year. An oral contract with a term longer than one year can comply with the statute of frauds if it is possible to complete the contract within a year. *See McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 490 680 N.E.2d 1347, 1352 (Ill. 1997) ("if performance is possible by its terms within one year, the contract is not within the statute regardless of how unlikely it is that it will actually be performed within one year"). Data Interfuse has made no

---

[1] Count VII is mis-labeled as a second Count VI.

[2] The parties dispute whether Illinois or Virginia law applies. But there is no conflict of law for most of Data Interfuse's claims. The Court directly addresses the applicable law only where necessary. *See Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*,10 N.E.3d 902, 905 (Ill. 2014) (Illinois law permits a choice-of-law determination only "when a difference in law will make a difference in the outcome."); *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 963 N.E.2d 930, 945 (Ill. App. Ct. 1st Dist. 2011) ("If the law of the jurisdictions in question is essentially the same on the disputed point, there is no need to apply a choice-of-law analysis . . . . In the absence of a conflict, Illinois law applies as the law of the forum.").

allegation making it impossible for the renewed contract to have been fully performed within a year.

Furthermore, the statute of frauds "does not require that the contract itself be in writing, only that there be adequate documentary evidence of its existence and essential terms." *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295 (7th Cir. 2002). And the statute of frauds is an affirmative defense, meaning that dismissal at the pleading stage is only appropriate if the complaint "sets forth everything necessary to satisfy the affirmative defense," *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005), such that the plaintiff has "affirmatively plead himself out of court," *Chicago Building Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014).

Data Interfuse does not allege that the agreement was embodied in a written contract. But it alleges that it provided a budget to OTR, and OTR made payments to Data Interfuse, allegedly in compensation for beginning the expanded project. These allegations are a reasonable basis to infer that a writing exists setting forth the terms of the expanded project. *See Nikollbibaj v. US Foods, Inc.*, 2022 WL 16836407, at *4 (N.D. Ill. Nov. 9, 2022) (denying motion to dismiss based on the statute of frauds). No allegation in the complaint makes it impossible that any of the communications mentioned in the complaint embody the agreement, whether alone or in combination. *See Dargo v. Clear Channel Commc'ns, Inc.*, 2008 WL 2225812, at *2 (N.D. Ill. May 28, 2008) (denying a motion to dismiss because the plaintiff had not "pleaded any facts which clearly indicate that no document memorializing the oral agreement existed"). Like the issue of the alleged contract's duration, the question of whether a

writing exists is not foreclosed by Data Interfuse's allegations. Thus, it is inappropriate to dismiss the claim for breach of the oral contract at the pleading stage.

## II. No-Oral Modification

OTR argues that Data Interfuse's claim for breach of the alleged oral agreement to expand the scope of the original contract must be dismissed because the original contract contained a provision prohibiting oral modifications. But both Virginia and Illinois law provide circumstances in which parties can orally modify a provision of a contract prohibiting oral modification. *See Reid v. Boyle*, 527 S.E.2d 137, 145 (Va. 2000) ("Nor does it make any difference that the original written contract provided that it should not be substantially varied except by writing."); *R.J. O'Brien & Assocs., Inc. v. Vierstra*, 2003 WL 1627271, at *5 (N.D. Ill. Mar. 27, 2003) ("[U]nder Illinois law, parties to a written contract may alter or modify its terms by subsequent oral agreement, even though the terms of the contract preclude oral modification."). Application of this principle assumes compliance with the statute of frauds. But as discussed, discovery is required on that issue. Similarly, discovery is required on the question of whether the parties orally modified the agreement at all.

## III. Tortious Interference with Meyer's Employment Contract

Data Interfuse alleges that OTR induced Meyer to breach his employment agreement with Data Interfuse by revealing Data Interfuse's "protected information" to OTR. Meyer's agreement prohibits him from disclosing:

> confidential information of a special and unique nature and
> value relating to such matters as Data Interfuse's and its

7

> customers' secrets, systems, programs, procedures, manuals, confidential reports and communications, lists of customers and clients, and any other materials or information related to the business or activities of Data Interfuse or its clients which are not generally known to others engaged in similar businesses or activities. . . . Protected Information shall also include materials and information that is patentable or otherwise protectible by copyright, patent, trademark, or trade secret laws . . . .

R. 53-2 at 2 (¶ 1.A).

OTR argues that this claim should be dismissed because Data Interfuse "fails to allege any facts whatsoever to identify or put OTR on notice of the specific 'material and information' Meyer allegedly disclosed to OTR that would violate the terms of [his employment agreement]." R. 62 at 8. Data Interfuse argues that Rule 8's pleading standard does not require it to allege the information Meyer disclosed.

Perhaps Data Interfuse is not required to allege disclosure of specific information. But it must be plausible that Meyer disclosed information he was prohibited from disclosing. And the context of the pleadings in this case do not make it plausible that OTR induced Meyer to reveal information about anything other the project Meyer was already working on for OTR. Per the terms of its agreement with Data Interfuse, OTR owned Data Interfuse's work product performed for OTR. Thus, to the extent that Meyer can be said to have "disclosed" information about the work he performed while employed at Data Interfuse while working on the OTR engagement, such disclosure could not violate his employment agreement because OTR already owned that information.

8

Furthermore, it is not plausible that Meyer possessed protected information beyond the OTR project. Data Interfuse alleges that it hired Meyer specifically to work on the OTR project and Data Interfuse does not allege that he was assigned to any other client engagement. Without an express allegation that Meyer possessed information OTR was not already entitled to possess, it is not plausible to infer that he gained any such information in just two weeks of employment when OTR was his only assignment. Without more, the claim of disclosure in violation of the employment agreement isn't plausible and must be dismissed.

### IV. Fraud

Data Interfuse alleges that OTR is liable for fraud because OTR's officer "did not plan [to] follow-through" on promises he made to Data Interfuse. *See* R. 71 at 7. But a failure to satisfy a promise to do something in the future—which is the essence of a contractual agreement—is not fraudulent as a matter of law. *See Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008) ("Under no circumstances, however, will a promise of future action support a claim of constructive fraud."). Rather, to state a claim for fraud, "the alleged misrepresentations must be statements of present or preexisting facts, not statements of future intent or conduct." *Ault v. C.C. Servs., Inc.*, 597 N.E.2d 720, 722 (Ill. App. Ct. 3d Dist. 1992); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act."). Therefore, Data Interfuse's fraud claim must be dismissed.

## V. Tortious Interference with Prospective Economic Advantage

The parties agree that a claim for tortious interference with prospective economic advantage requires the plaintiff to allege that the defendant caused an intentional and unjustified interference that induced or caused a breach or termination of a reasonable business expectancy. OTR also notes, and Data Interfuse does not dispute, that the act causing the interference must be taken by the defendant and "directed toward the party with whom the plaintiff expects to do business." *Unique Envelope Corp. v. GSAmerica, Inc.*, 2002 WL 598511, at *4 (N.D. Ill. Apr. 18, 2002).

Data Interfuse alleges that OTR's "logic bomb" allegation caused it to lose security clearances and to lose clients as a result. This allegation proves too much. Data Interfuse does not allege that OTR told its clients that Data Interfuse hacked OTR's systems. Rather, Data Interfuse contends that the "logic bomb" allegation made Data Interfuse unqualified to serve certain clients. Whether or not Data Interfuse's loss of clients is a proximate result of the "logic bomb" allegation, it is not the result of any action taken directly towards Data Interfuse's clients. There is an intermediate step of the loss of security clearances which takes Data Interfuse's allegations out of the realm of tortious interference. Courts have dismissed similar claims in which the plaintiff did not allege that the defendant took direct action towards the plaintiff's clients or customers, but instead the plaintiff alleges that the defendant's action diminished the plaintiff's reputation or ability to provide some service to its clients, thereby causing the plaintiff to lose customers. *See Della Parola*

*Cap. Mgmt., LLC v. Blaze Portfolio Sys., LLC*, 2021 WL 3674613, at \*6 (N.D. Ill. Aug. 19, 2021) (dismissing tortious interference claim against a financial software company even though the company knew its software would fail, which eventually caused the plaintiff that purchased the software to lose clients); *Boffa Surgical Grp. LLC v. Managed Healthcare Assocs. Ltd.*, 47 N.E.3d 569, 577-78 (Ill. App. Ct. 1st Dist. 2015) ("Even if defendants' conduct of not offering the [plaintiff] membership in defendants' network was likely to dissuade other physicians from making referrals to the [plaintiff] or dissuade other patients from using their services, courts have rejected this argument, instead requiring that the interfering action be directed in the first instance at the third party.").

An action that causes the loss of prospective clients or customers can be actionable under a claim for tortious interference. But the plaintiff must allege that the defendant directly communicated with or acted towards the prospective clients or customers. *See Logan Graphic Prod., Inc. v. Textus USA, Inc.*, 2002 WL 31507174, at \*1 (N.D. Ill. Nov. 8, 2002) (denying motion to dismiss tortious interference claims because the plaintiff alleged that the defendant communicated with prospective "retailers and distributors" of a product the plaintiff planned to sell); *Kozlowski v. Greenridge Farm, Inc.*, 338 F. Supp. 3d 828, 840-41 (N.D. Ill. 2018) (denying motion to dismiss tortious interference claims because the plaintiff alleged that the defendant told the plaintiff's customers that the plaintiff had discriminated against her based on her pregnancy). Data Interfuse does not allege that OTR contacted its clients and told them Data Interfuse had hacked its system. Without an allegation of

11

such direct contact, Data Interfuse has failed to state a claim for tortious interference with business.

## VI. Abuse of Process

Unlike tortious interference with prospective economic advantage, the claim of abuse of process does not require direct contact between the defendant and the relevant third party. Instead, the claim merely requires allegation of: (1) the existence of an ulterior motive or purpose; and (2) an act in the use of a legal process that is not proper in the regular prosecution of the proceedings. *See Podolsky v. Alma Entergy Corp.*, 143 F.3d 364, 372 (7th Cir. 1998) (citing *Kirchner v. Greene*, 691 N.E.2d 107, 116 (1st Dist. 1998); *Eubanks v. Thomas*, 861 S.E.2d 397, 403 (Va. 2021)). "Legal process," in the context of this claim, means something "issued by the court, under its official seal and must be distinguished from pleadings." *Sweports, Ltd. v. Abrams*, 2021 WL 2697177, at *7 (Ill. App. Ct. 1st Dist. 2021).

Here, Data Interfuse alleges that it has been injured by OTR's "logic bomb" allegation. But an allegation in a complaint is not "legal process" because it is not an action by the court. *See id.* (dismissing an abuse of process claim because "the plaintiffs' allegation that [the defendant] knowingly filed a time-barred derivative action is based on a 'pleading' – not a court 'process' – and is thus outside of the scope of an abuse of process claim"); *Am. Transp. Grp., LLC v. Power*, 2018 WL 1993204, at *7 (N.D. Ill. Apr. 27, 2018) ("Despite Defendants' argument that their alleged abuse of process does not arise from the pleadings, their complaint that [the plaintiff's] actions in filing this lawsuit (on what they believe to be improper grounds) and

12

seeking injunctive relief leads the Court to no other conclusion."). Because Data Interfuse does not allege that it was injured by any court action, its abuse of process claim must be dismissed.

## VII. Wiretap Act

Data Interfuse claims that OTR's officer violated the Illinois Wiretap Act by recording a conversation with a Data Interfuse employee without the employee's permission. *See* 720 ILCS 5/14-2. OTR argues that Virginia law should govern, because that is where the Data Interfuse employee received the call, and Virginia law permits unilateral recording of phone calls. *See* Va. Code Ann. § 19.2.62.B.2 ("It shall not be a [violation] under this chapter for a person to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.").

Illinois choice-of-law rules apply to this case because this Court is located in Illinois. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). Illinois follows the choice-of-law approach set out in the Restatement (Second) of Conflict of Laws, under which the law governing a claim is that of the state with the most significant contacts relating to that claim. *See Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 739 N.E.2d 1263, 1269 (Ill. 2000); *Curran v. Kwon*, 153 F.3d 481, 488 (7th Cir. 1998). This approach requires application of the law of the place where the injury occurred, "unless another state has a more significant relationship to the claim." *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir. 1981); *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 904 (Ill. 2007). Factors considered

13

include the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the parties' relationship is centered. *See* Restatement (Second) of Conflict of Laws § 145(2) (1971).

Here, OTR's officer made the recording in Illinois. But Data Interfuse is based in Virginia and its employee received the call in Virginia. Because the injured party was located in Virginia, any injury from the eavesdropping occurred in Virginia. *See Quarasan Grp., Inc. v. Nozani, LLC*, 2020 WL 6118536, at *2 (N.D. Ill. Oct. 17, 2020) (dismissing an Illinois Wiretap Act claim, even though the call was made from Illinois, because the call was received in Utah, and Utah law permits unilateral recording). And since Virginia permits unilateral recording by a party to a phone call, Data Interfuse has failed to state a claim for eavesdropping in violation of Virginia law.[3]

## Conclusion

Therefore, OTR's motion to dismiss [61] is granted in part and denied in part. The motion is granted in that Count III, IV, V, VI, and VII of Data Interfuse's counterclaims are dismissed. The motion is denied with respect to Count II.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: January 17, 2023

---

[3] To the extent the parties contractual choice of law provision governs injury from the phone call, Virginia is the applicable law under the contract.